JAN 3 0 2014

CLERK U.S. ...
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Walter Thomas Godbey, Sr.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:11cv704 (TSE/TCB)** |
| | ) | |
| **Hubert Simmons, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Walter Thomas Godbey, Sr., a federal inmate proceeding pro se, filed this civil rights action pursuant to both 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), seeking monetary damages for the allegedly unlawful seizure of his "privileged legal work product" by officers of the Prince William County Police Department ("PWCPD") and the Federal Bureau of Prisons ("FBOP"). The matter now comes before the Court on the Motion to Dismiss and Motion for Judgment on the Pleadings of defendant Paul J. Masterson. After careful consideration, Masterson's motion will be granted, and the claim against him will be dismissed with prejudice.  As service of the complaint has not been effected on the only other named defendant remaining in the lawsuit, Officer Hubert Simmons, he will be dismissed from the action pursuant to Fed. R. Civ. P. 4(m), and plaintiff's various motions seeking to have Simmons served will be denied, as moot.

### I. Background

On May 7, 2008, plaintiff became a federal inmate confined at FCI Petersburg pursuant to a judgment of the District of Colombia Superior Court.  Dkt. 1, Ex. 4, ¶ 5.  During the early part

of 2009, plaintiff was contacted by Detective Paul Masterson of the PWCPD with respect to a missing persons investigation. Compl. at 6. Allegedly by using "deceptive investigation techniques," Detective Masterson succeeded in "manipulat[ing]" plaintiff into revealing incriminating information. Id. During this process, plaintiff allegedly kept "copious notes" concerning his encounters with the detectives, and stored those notes along with copies of his correspondence with Detective Masterson in a brown file folder. Id. Plaintiff alleges that among the contents of the folder was information that was exculpatory to him, as well as "personal, private notes ... in preparation for counsel should the Plaintiff be charged...." Id.

On November 4, 2009, plaintiff was indicted for murder by Virginia authorities. The facts underlying his arrest were described as follow in the search warrant executed by Detective Masterson and used to obtain plaintiff's property:

> On 12-[illegible]-01, Ann Godbey was reported to the police by family members as a missing person. Through the course of that investigation, the victims husband, Walter Godbey Sr., was listed as a suspect in her disappearance. During later interviews and written correspondence, Walter Thomas Godbey Sr. admitted to shooting and deposing [sic] of his wife's body. During these interviews, detectives have seen documents and watched Walter Godbey read from notes, letters and personally drafted affidavits pertaining to his wife's murder.
>
> On 11-9-09 Walter Godbey was transported from the FCC Petersburg-LOW facility to the Prince William County Jail. Walter Godbey did not take any of his personal possessions with him and on his transfer paperwork signed that he had no personal property.[1]
>
> I contacted the FCC Petersburg-LOW and spoke to Officer H. Simmons who related to me that all of Walter Godbey's possessions

---

[1] Godbey states in the complaint that upon his transfer to the Prince William County facility, staff members at FCI Petersburg "packed out" his belongings from his locker and cell, including the file containing his notes and correspondence with Detective Masterson. Compl. at 7.

> are now being stored in his SIS Office at the prison.
>
> I believe that contained within the personal possessions of Walter Thomas Godbey will be found documentation to support the crime of murder.

Am. Compl., Ex. F, Aff. for Search Warr. at 2.

A writ of habeas corpus *ad prosequendum* was served on plaintiff on November 9, 2009. Compl. at 8. On that same date, "[w]ithout warning or ... the protections of the Interstate Agreement on Detainers Act," plaintiff was transported to the Prince William Manassas Adult Regional Detention Center. Compl. at 6 -7. About three days later, Detective Masterson allegedly met with Officer Hubert Simmons at FCI Petersburg, and removed plaintiff's property from his cell and locker. Compl. at 7. Among the items that were handed over to Detective Masterson was the file plaintiff had prepared regarding his anticipated Virginia prosecution. Id. On June 24, 2010, plaintiff pleaded guilty in the Circuit Court of Prince William County to a reduced charge of voluntary manslaughter, and was sentenced to ten (10) years incarceration in the Virginia Department of Corrections. See Compl., Ex. D, Conviction and Sentencing Order, PWC Case No. CR09002252-00.

Based on the foregoing facts, plaintiff asserted in the initial complaint that his rights under the Fourth Amendment were violated when his "privileged legal materials" were taken from his locker at FCI Petersburg, allegedly without a warrant. Compl. at 8. In addition, plaintiff claimed that his rights under the Interstate Agreement on Detainers Act ("IADA") were compromised when he was not given a pre-transfer hearing prior to his "extradition" to Virginia custody. Compl. at 7. Plaintiff further contended that his rights under the Freedom of Information Act ("FOIA") were violated because he requested information regarding the folder

3

that was taken from him, but received no response. Compl. at 3. Without providing additional

detail, plaintiff stated that the confiscation of his so-called privileged legal work product "tainted

the cases and prejudiced the Plaintiff" and "caused [him] to suffer and endure damages and

injuries in the form of incarceration...." Compl. at 3. Lastly, plaintiff alleged in conclusory

fashion that he was the victim of a host of torts. Compl. at 10 -12. Plaintiff named as

defendants the FBOP, the PWCPD, FCI Petersburg Correctional Officer Simmons, and PWCPD

Detective Masterson. As relief, plaintiff sought a total of $20 million in compensatory and

punitive damages, as well as injunctive relief removing the individual defendants from their

professional positions.

Subsequently, plaintiff filed an Amended Complaint. Dkt. 12. In it, plaintiff

acknowledged that he had received a letter from the FBOP on June 17, 2011, in response to his

FOIA request. Am. Compl. at 1. Enclosed with the letter was a copy of the search warrant,

partially quoted above, that was obtained by the PWCPD and used in the seizure of plaintiff's

property. Id. Plaintiff asserted in the amended complaint that  warrant was unlawfully vague

and overly broad, such that it was "insufficient" to protect defendants from liability for their

actions in this matter. Am. Compl. at 2.

By Order dated August 2, 2012, plaintiff's claim that his rights under the IADA was

dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A, and his claim that his rights

under FOIA were violated was dismissed as moot. Dkt. 7. In addition, the Prince William

County Police Department ("PWCPD") and the Federal Bureau of Prisons ("BOP") were

dismissed as parties to the action for failure to state a claim, and it was directed that the action

would proceed solely on plaintiff's Fourth Amendment claim against Detective Masterson of the

4

PWCPD and Officer Simmons of the BOP, as well as on plaintiff's pendent state tort claims. On August 21, 2012, plaintiff moved for reconsideration of the August 2 Order, contending that dismissal of his IADA claim was error and seeking to add additional defendants. Dkt. 10. By Order dated January 17, 2013, the Motion for Reconsideration was denied, and service of the complaint was ordered on defendants Detective Masterson and Officer Simmons. Dkt. 13. On February 4, 2013, the summons sent to Officer Simmons was returned to the Court by officials at FCI Petersburg with the notations "Return to Sender, Not at This Address, Unable to Identify" and "Unable to Forward." Dkt. 18.

On April 29, 2013, plaintiff noticed an appeal of the Order of January 17, 2013 denying his Motion for Reconsideration. Dkt. 30. By unpublished opinion dated June 18, 2013, the appeal was dismissed for lack of jurisdiction. Godbey v. Simmons, No. 13-6695 (4th Cir. June 18, 2013); Dkt. 41. The mandate issued on August 28, 2013. Dkt. 48.

Now before the Court are Detective Masterson's Motion to Dismiss and Motion for Judgment on the Pleadings, which were accompanied by a supporting memorandum and exhibits. Dkt. 21, 22, 24. Plaintiff was provided with an opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), and he filed a response captioned as a Motion in Opposition to defendant Masterson's Motion to Dismiss with a supporting memorandum. Dkt. 26 - 27. After careful consideration, defendant's motions must be granted, and plaintiff's claim against him must be denied, with prejudice. Also pending before the Court are several motions filed by plaintiff seeking additional information and efforts to achieve service of the complaint on Officer Simmons. Because it is now apparent that plaintiff's claim against Simmons would fail for the same reasons his claim against Masterson warrants

dismissal, Simmons will be dismissed from the lawsuit pursuant to Fed. R. Civ. P. 4(m), and

plaintiff's motions will be denied, as moot.    Lastly, because plaintiff's claims over which this

Court would have original jurisdiction are subject to dismissal, the Court will decline to  to

exercise supplemental or pendent jurisdiction over the tort claims plaintiff asserts.

## II. Standard of Review

A motion to dismiss tests whether a complaint states a cause of action upon which relief

can be granted.  Whether a complaint states a claim upon which relief can be granted is

determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."

Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998).  That is, the alleged facts are

presumed true, and the complaint should be dismissed only when "it is clear that no relief could

be granted under any set of facts that could be proved consistent with the allegations."  Hishon v.

King & Spalding, 467 U.S. 69, 73 (1984).

Where, as here, a complaint is filed by a prisoner acting pro se, it must be construed

liberally no matter how unskillfully it is pleaded.  Haines v. Kerner, 404 U.S. 519 (1972).   A pro

se litigant thus is not held to the strict pleading requirements demanded of attorneys. Estelle v.

Gamble, 429 U.S. 97, 106–07 (1976); Figgins v. Hudspeth, 584 F.2d 1345 (4th Cir. 1978), cert.

denied, 441 U.S. 913 (1979).  Nonetheless, to survive a motion to dismiss his complaint, a

plaintiff still must provide "more than labels and conclusions," because "a formulaic recitation of

the elements of a cause if action will not do." Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

In analyzing whether dismissal of a complaint is warranted, the court follows a two-step

analysis.  First, bare assertions and all unsupported legal conclusions that are not supported by

facts are not entitled to a presumption of truthfulness and must be dismissed.  Ashcroft v. Iqbal,

6

556 U.S. 662, 680 - 82 (2009). Second, the court then determines if the factual allegations "plausibly suggest and entitlement to relief.." Id. at 679. The latter is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Id.

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The United States Court of Appeals for the Fourth Circuit recently echoed the principle that, for a claim to go forward, "the factual allegations in the complaint, viewed as a whole, [must] have facial plausibility that allow the court to draw the reasonable inference that the defendant are liable for the misconduct alleged." Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013) (quoting Iqbal, 556 U.S. at 678). Whether filed by a pro se litigant or not, "claims brought in federal court are ... subject to the generally applicable standards set forth in the Supreme Court's entire Rule 8(a) jurisprudence, including Twombly and Iqbal." Cook v. Howard, 484 F. App'x 805, 810 (4th Cir. 2012).

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).

7

### III. Analysis

A.  Defendant Masterson

It is clear that plaintiff's claim against Detective Masterson is subject to dismissal for

several reasons.  First,  plaintiff has no Fourth Amendment right to vindicate with respect to the

seizure of the property he possessed while in prison.  Second, even if the Fourth Amendment did

protect plaintiff's papers from unreasonable seizure, that protection was afforded in his case

because Masterson obtained a search warrant.  Third, in any event, Detective Masterson is

entitled to qualified immunity for his actions with respect to plaintiff's property.

The events relevant to plaintiff's claim against Masterson are detailed in Masterson's

narrative report, submitted as an exhibit to his Motion to Dismiss.[2]  In 2009, prior to his

retirement from his position as a PWCPD detective, Masterson was investigating the

disappearance of Godbey's wife, Ann.  On November 20, 2009, Masterson traveled to Prince

Georges County, Virginia to obtain a search warrant for materials that prison officials at FCC had

removed from Godbey's cell.  Dkt. 22, Ex. 2.  Masterson obtained a search warrant from a local

magistrate and, accompanied by a detective from the Prince Georges County Police Department,

went to FCI Petersburg to execute the warrant.  Id.  The two met with BOP Officer Simmons and

showed him the warrant, and then were seated in a conference room to which Godbey's

belongings were brought.  Id.  The belongings were contained in "5 military type duffel bags with

the exception of one clear bag that contained shoes." Id.  The items taken by Detective Masterson

were in a brown file folder that contained letters Masterson had written to Godbey, and copies of

_____

[2]The Fourth Circuit recognizes that it is appropriate to consider public documents when deciding
a motion to dismiss.  See Sec'y for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir.
2007).

letters Godbey sent to Masterson. In addition, there was an unfinished letter from Godbey to Masterson, an obituary Godbey had written for his wife, and a Polaroid photograph of Godbey and a woman named Karla. Id. Most significant here, Masterson stated: "There were several large envelopes and folders that had either attorney's names on them or they had some legal designation assigned to them. **None** of these items were searched." Id., emphasis original.[3]

As a result of his investigation, Masterson took the case before the Prince William County grand jury and obtained a direct indictment charging Godbey with murder, use of a firearm in the commission of a felony, and abduction in the death of Ann Godbey. Def. Mem. at 2.[4]  On November 3, 2009, the grand jury returned a true bill on all counts. Id.  On June 23, 2010, Godbey pleaded guilty to a reduced charge of voluntary manslaughter in the death of his wife. Def. Mem., Ex.1.

Godbey's claim that Detective Masterson violated his Fourth Amendment right to be free from unreasonable searches and seizure must be dismissed in the first instance for the simple reason that Godbey has no such right.[5]  The law is clear that because an inmate has no cognizable

---

[3]Plaintiff never forthrightly states the nature of the materials seized by Detective Masterson. However, the detective's description in the narrative report makes it plain that they were not related to legal research or protected by the attorney client privilege. Thus, their characterization as "privileged legal work product" throughout the complaint and amended complaint is inaccurate. See, e.g., Solis v. Food Employers Labor Relations Ass'n, 644 F.3d 221, 231-2 (4th Cir. 2011) ( "[T]he work product doctrine belongs to the attorney and confers a qualified privilege on documents prepared by an attorney in anticipation of litigation.")

[4]Two additional charges related to a bank robbery. Id.

[5]In the initial complaint, read liberally, Godbey's claim apparently was predicated on the allegation that Masterson confiscated his papers without a warrant. However, when a copy of the warrant was provided in response to Godbey's FOIA request, he was compelled to retreat in the amended complaint to the position that the warrant was insufficiently specific to afford Fourth Amendment protection.

expectation of privacy in his prison cell, the Fourth Amendment offers no protection against its search. DeBlasio v. Johnson, 128 F.Supp.2d 315, 325 (E.D. Va. 2000) (Hilton, J.) ("[T]he Fourth Amendment does not establish a right to privacy in prisoners' cells."), aff'd, 13 Fed. App'x 96 (June 27, 2001). Moreover, the Supreme Court has made it clear that the absence of Fourth Amendment protection in the prison context applies with equal force to the search itself as well as to the seizure and destruction of an inmate's property:

> Respondent contends also that the destruction of his personal property constituted an unreasonable seizure of that property violative of the Fourth Amendment. Assuming that the Fourth Amendment protects against the destruction of property, in addition to its mere seizure, the same reasons that lead us to conclude that the Fourth Amendment's proscription against unreasonable searches is inapplicable to a prison cell, apply with controlling force to seizures. Prison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests ....

Hudson v. Palmer, 468 U.S. 517, 528 n. 8 (1984); see also, Ballance v. Young, 130 F.Supp.2d 754 (W.D. Va. 2000) (holding that confiscation from a cell of three scrapbooks and a letter written to inmate's lawyer did not violate inmate's constitutional rights, since "[u]nder the Fourth Amendment ... a prisoner has no cognizable expectation of privacy in his cell."), aff'd sub nom. Ballance v. Rowlette, 11 Fed. App'x 174 (4th Cir. Apr. 26, 2001). The fact that the items at issue here had been removed from Godbey's cell and placed in a storage locker while he was on loan to Virginia officials does not alter this principle. As Godbey had no cognizable expectation of privacy in his cell or its contents, the Fourth Amendment was not offended when items were removed by Detective Masterson.

Second, even if Godbey's prison possessions were protected by the Fourth Amendment, Detective Masterson afforded those protections by obtaining a warrant prior to conducting the

search.  As the Supreme Court has recognized, "Where the alleged Fourth Amendment violation

involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a

warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as

we have sometimes put it, in 'objective good faith.'" Messerschmidt v. Millender, 182 L. Ed.2d

47, 57 (2011).  The Fourth Circuit also has held that "[w]hen a police officer protects a suspect's

rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some

protection from suit under 42 U.S.C. § 1983." Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th

Cir. 1991).  That is so because a "magistrate's determination of probable cause provides

additional support for the claim that [the officer] acted with objective reasonableness." Id.

In this case, once plaintiff was forced to acknowledge in the amended complaint that

Detective Masterson did have a warrant for the search of plaintiff's cell, he attempted to

ameliorate the importance of that fact by arguing that the warrant was "too vague and fails to be

specific enough to be a lawful warrant." Am. Compl. at 2.  However, even a cursory review of

the warrant obtained by Detective Masterson belies this contention.

While the Fourth Amendment prohibits general warrants and general searches, the

specificity required to pass constitutional muster "varies with the circumstances within a

practical margin of flexibility." United States v. Shilling, 826 F.2d 1365 1369 (4th Cir. 1987),

abrogated on other grounds by Staples v. United States, 511 U.S. 600 (1994).  Thus, a warrant

that describes the items subject to seizure in broad, generic terms can be valid if the description is

as specific as the circumstances and the nature of the activity under investigation permit.  United

States v. Dickerson, 166 F.3d 667, 693-94 (4th Cir. 1999) (description of "evidence of crime of

bank robbery" deemed sufficient since that crime tends to generate distinct evidence), rev'd on

11

other grounds, 530 U.S. 428 (2000). "The test for the necessary particularity is a pragmatic one: The degree of specificity required when describing the good to be seized may necessarily vary according to the circumstances and type of items involved." United States v. Davis, 67 Fed. App'x 771, 777 (4th Cir. May 7, 2003), quoting United States v. Torch, 609 F.2d 1088, 1090 (4th Cir. 1979).

In this case, the Affidavit for Search Warrant specified that the search was for "all documents both written and retained by Walter Thomas Godbey Sr., including maps and drawings, any electronic storage devices such as thumb drives and discs and any other item to support the crime of murder." Am. Compl., Ex. F, Att. 1. Since the Fourth Circuit recognizes that a warrant is valid "so long as [it] at least minimally 'confines the executing officers' discretion by allowing them to seize only evidence of a particular crime,'" Dickerson, 166 F.3d at 694, quoting United States v. Fawole, 785 F.2d 1141, 1144 (4th Cir.1986), and since the warrant obtained by Detective Masterson expressly referenced the crime of murder, it was sufficiently specific to satisfy the Fourth Amendment. Thus, even if the Fourth Amendment were deemed to apply to the search of Godbey's cell, no violation of its principles occurred.

Third, even if neither of the foregoing precepts were true, Detective Masterson is qualifiedly immune from suit for his actions with respect to Godbey. Police officers enjoy qualified immunity from civil suits when the performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To ascertain whether the defense applies, a court must determine whether, "[t]aken in the light most favorable to the party asserting the injury," the facts alleged by that party "show the officer's conduct violated a

constitutional right." Id. at 201. If it did, the court must then ask whether "it would be clear to an objectively reasonable officer that his conduct violated that rights." Id. at 202. The second inquiry turns upon "whether a reasonable [officer] could have believed [the challenged conduct] to be lawful, in light of clearly established law." Meeker v. Edmundson, 415 F.3d 317, 323 (4th Cir. 2005). If the court finds that a reasonable official could have believed the challenged conduct to be lawful, the officer is entitled to qualified immunity. Id.

Here, there is no question that Detective Masterson is entitled to qualified immunity with respect to his search of Godbey's possessions. "The Supreme Court has held that when a police officer acts pursuant to a warrant, he is entitled to qualified immunity if he could have reasonably believed that there was probable cause to support the application." Porterfield v. Lott, 156 F.3d 563, 570 (4th Cir. 1998). Nothing in this case suggests that Detective Masterson had any reason to doubt that probable cause existed to support the search warrant he obtained. Thus, even if the Fourth Amendment did protect the materials Godbey retained in his prison cell, Detective Masterson is qualifiedly immune from suit with respect to his search and seizure of Godbey's property. Thus, for all of the foregoing reasons, Detective Masterson's Motion to Dismiss and Motion for Judgment on the Pleadings will be granted, and the claim against him will be dismissed, with prejudice.

B. Defendant Simmons

As noted above, the Court's attempt to mail a summons to defendant BOP Officer Simmons at his address of record was returned on February 4, 2013, marked "Return to Sender, Not at This Address, Unable to Identify" and "Unable to Forward." Dkt. 18. Plaintiff in reaction has filed Motions for Default, for Production of Information, and for Notice of Appearance, Dkt.

13

28, 39-40, all seeking essentially to have the Court make further efforts to serve Officer

Simmons. As a practical matter, even were the Court inclined to do so, it appears unlikely that

such efforts would be successful, since the returned envelope addressed to Simmons at FCI

Petersburg indicated that Simmons was "Not at This Address" and was "Unable to [be]

Identif[ied]" and that officials were "Unable to Forward" the mail to him. Dkt. 18. While the

Court under such circumstances at times might attempt service by the United States Marshal on

behalf of a pro se litigant, such an effort here would be a waste of judicial resources, because it is

now clear that Godbey cannot prevail on his claim against Simmons. According to Detective

Masterson's narrative report, Simmons' sole participation in the events giving rise to this lawsuit

was to bring Godbey's belongings to a conference room for inspection by Detective Masterson

after being presented with the search warrant Masterson had obtained. Dkt. 22, Ex. 2.  Thus,

Godbey's claim against Simmons is no more valid than his claim against Masterson, and the

same principles that insulate Masterson from § 1983 liability would apply with equal force to

Godbey's Bivens claim against Simmons: (1) the Fourth Amendment does not protect the

contents of Godbey's cell from search and seizure; (2) even if it did, Simmons in producing

Godbey's possessions acted pursuant to a search warrant obtained from a neutral magistrate that

was shown to him by Masterson; and (3) Simmons enjoys qualified immunity as a result.  See

Hartman v. Moore, 547 U.S. 250, 254 n. 2 (2006) (stating that a claim under Bivens is "the

federal analog to suits brought against state officials" under § 1983); Butz v. Economou, 438

U.S. 478, 500 (1978) (noting that the immunities available in Bivens claims thus are nearly

identical to those in actions arising under § 1983). Under these circumstances, the futility of

further attempts to serve Simmons is apparent, so judicial economy requires that Godbey's

Motion for Production of Information and Motion for Notice of Appearance be denied, and Simmons will be dismissed as a party to the action pursuant to Fed. R. Civ. P. 4(m).  Because Simmons has not been served, Godbey's Motion for Default against him also must be denied.

      C.  Plaintiff's Tort Claims

      In addition to the federal claims discussed above, Godbey in the initial complaint also appears to allege a number of generalized claims for torts such as libel, defamation, and the "loss of the enjoyment of life." Compl. at 10-12.   Because the §1983 and Bivens claims over which this Court otherwise would have original jurisdiction are subject to dismissal, as discussed above, there is no good cause or sound reason to exercise supplemental or pendent jurisdiction over the tort claims Godbey asserts.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); White v. Amman's, Inc., 1988 WL 1077 at *1 (4th Cir. 1988) ("Because there is no subject matter jurisdiction, White's additional claims regarding pendent jurisdiction were properly dismissed.") As it thus is clear from the face of the complaint that subject matter jurisdiction over plaintiff's tort claims does not exist, they will be dismissed pursuant to Fed. R. Civ. P. 12(h)(3).

## IV.  Conclusion

      For the foregoing reasons, defendant Masterson's Motions to Dismiss and for Judgment on the Pleadings must be granted, and Godbey's claim against him must be dismissed, with prejudice.  Defendant Hubert Simmons must be dismissed as party to the action pursuant to Fed. R. Civ. P. 4(m), and plaintiff's motions concerning further attempts to serve him will be denied,

as moot.   Plaintiff's tort claims will dismissed pursuant to Fed. R. Civ. P. 12(h)(3).   An appropriate Order shall issue.

Entered this _____ 30ᵗʰ _____ day of ___ January _____ 2014.


Alexandria, Virginia

_____
T. S. Ellis, III
United States District Judge

16